David L. Weik, Pro Se

P.O. Box 95

Frenchtown, Montana 59808

Tel. 424-333-1893

**FILED**

NOV 2 4 2023

Clerk, U S District Court
District Of Montana
Missoula

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MISSOULA

| | |
|---|---|
| **DAVID L. WEIK** | § CIVIL ACTION NO. |
| **Plaintiff** | § _____ |
| | § |
| **VS.** | § |
| | § **PLAINTIFF'S ORIGINAL** |
| JIM ASBY, ET AL, individually; | § **COMPLAINT AND JURY** |
| AND official capacity; AND, TERESA | § **DEMAND** |
| POSIE, ET AL, individually; AND, | § |
| Official capacity; AND T & J WOOD | § |
| PRODUCTS LLC; AND, CARLA | § |
| HARDY, ET AL, individually; AND | § |
| RYDEL PETERSON, ET AL, individually; | § |
| DOES I-X; JANE DOES I-X; JOHN DOES | § |
| I-X; CORPORATION I-X; XYZ | § |
| PARTNERSHIPS I-X | § |
| | § |
| **Defendants** | § |

**TO THE HONOARABLE UNITED STATES COURT DISTRICT JUDGE;**

COMES NOW, DAVID L. WEIK, Plaintiff, and appears Pro Se, in the above-styled and numbered causes of actions, the Complaint, against the Defendants, and complains of JIM ASBY, ET AL, and complains of TERESA POSIE, ET AL, and complains of T & J WOOD PRODUCTS LLC., ET AL, and complains of CARLA HARDY, ET AL, and complains of RYDEL PETERSON, ET AL as Defendants, and for good causes of actions Plaintiff would respectfully show the Court and alleges as follows:

## PARTIES

01. At the time of the offenses complained of, DAVID L. WEIK, was a resident of Missoula County, Montana.

02. Defendant JIM ASBY, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually and officially. Defendant, Jim Asby, may be served by causing citation and copy of process to be personally served upon him at his place of residence 2372 38th Street, Missoula, Montana, 59801 United States of America, at all times relevant to this Complaint

03. Defendant, TERESA POSIE, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually and officially. Defendant, Teresa Posie, may be served by causing citation and copy of process to be personally served upon her at her place of residence 13200 Lacasse Lane, Missoula, Montana 59808 United States of America, at all times relevant to this Complaint.

04. Defendant, T & J Wood Products, LLC, was at all times relevant hereto, and all times mentioned in this Complaint, a Limited Liability Corporation was acting officially. Defendant, T & J Wood Products registered agent, Teresa Posie, may be served upon her at her place of residence 13200 Lacasse Lane, Missoula, Montana 59808 United States of America, at all times relevant to this Complaint.

2.

05. Defendant, Carla Hardy, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually. Defendant, Carla Hardy, may be served by causing citation and copy of process to be personally served upon her at 3011 American Way, Missoula, Montana 59808 United States of America, at all times relevant to this Complaint

06. Defendant, Rydel Peterson, was at all times relevant hereto, and at all times mentioned in this Complaint was acting individually and officially. Defendant, Rydel Peterson, may be served by causing citation and copy of process to be personally served upon him at his place of residence 17050 Scheffer Lane, Frenchtown, Montana 59834 United States of America, at all times relevant to this Complaint.

07. All events complained of herein occurred in Missoula County, Montana.

08. It is believed that all named Defendants were and/or currently reside in Missoula County, Montana.

09. John Does I-X and Jane Does I-X are individuals or are married couples who were the managers, agents, employees of the owners ABC Corporations I-X or XYZ Partnerships, or one or all of the Defendants, and whose identities are presently unknown to the Plaintiff and who individually of the benefit of their marital communities committed some or all of the acts complained of herein.

10. Defendants ABC Corporations I-X and XYZ Partnerships I-X are Montana, foreign, general or limited partnerships who were owners, managers, agents, employers, or employees of one or all of the Defendants, whose identities are presently unknown to the Plaintiff and who committed some or all of the acts complained of herein.

## JURISDICTION AND VENUE

11. Plaintiff's action arises out of Defendants' conspiracy to deprive David Weik (hereinafter "Weik") of his property and Civil Rights, and protections provided under the federal Whistleblower Act.

12. This Court has subject matter jurisdiction over the matter under the Civil Rights Act

3.

pursuant to **28 U.S.C. § 1343**, federal question subject matter jurisdiction pursuant to **28 U.S.C. § 1331**, and has supplemental jurisdiction to **28 U.S.C. § 1367**, and allowing the Court to exercise jurisdiction over state claims since the claims arise of "a claim or controversy" as defined in Article III of the United States Constitution.

13. This is an action for damages exceeding $75,000.00 for violation of civil rights secured to the Plaintiff by the first, fifth, and fourteenth Amendments to the United States Constitution. In addition, this Court's jurisdiction is founded also in **U.S.C. sec 1337; 15 U.S.C. secs. 15, and 42 U.S.C. sec. 1983** (due process and equal protection clauses, and civil action for deprivation of rights), **1985** (conspiracy to interfere with civil rights), **1988** (proceedings in vindication of civil rights), **18 U.S.C. 241** (conspiracy), and **18 U.S.C. 242** (deprivation of rights under color of law).

14. Jurisdiction of this Court for the pendant claims is authorized by **F.R.Civ.P. 18(a)**, and arises under the doctrine of pendent jurisdiction as set forth in the ***United States Mine Workers v. Gibbs,*** **383 U.S. 715 (1966).** In the State of Montana, the jurisdiction to hear such cases is placed exclusively in the United States of America District Court of this state. All parties to this action reside in Montana, United States of America, at all times relevant to this Complaint. There is no other jurisdiction to which a mandatory change of venue would lie. Furthermore, venue is proper in his District under **28 U.S.C. § 1391(b)**, because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL AND LEGAL BACKGROUND

15. On or about October 18th, 2023, Plaintiff confronted Defendant Asby at work about having him write him a reimbursement check for the $1,200.00 the Plaintiff borrowed to cover a work-related injury he suffered a few months ago while on the job working for T & J Wood Products. Defendant Asby refused.

16. The Plaintiff insisted that it was a valid workman's comp claim, that it would have been covered by workman's comp had Defendant Asby allowed him to file a claim for the injury. The Defendant said he didn't care, and wasn't going to write out a check to the Plaintiff, a check for $1.200.00 the Plaintiff borrowed.

**4.**

17. The Plaintiff also told the Defendant, he contacted Montana's Workman's Comp Division, finding out then Defendant's business, T & J Wood Products company, was dissolved by the State of Montana Corporation Commission back about two years ago on December 1, 2021. and since the Plaintiff hadn't still received corrected W2 Forms from the Defendant's business, having already reported the Defendant to Workman's Comp Division, he also reported the Defendant to the Montana Tax Revenue Department, and the Internal Revenue Service for his failure to provide accurate W2 Forms, and other questionable T & J Wood Products business practices that violated tax laws.  It was then the Plaintiff demanded to know from the Defendant if he had ever been covered by workman's comp while employed with the company, or was he even covered now.

18. The Defendant refused to answer the workman's comp question about Plaintiff's insurance coverage. Instead, the Defendant walked up to the Plaintiff, and immediately fired him for having reported him to the different taxing agencies and workman's comp.  In addition, the Defendant immediately demanded the Plaintiff move off the property he had been living on with his R.V. for the past three years.

19. It is a fact; a verbal argument then ensued between the Plaintiff and Defendant, and it ended with both parties walking away from each other within moments of the face-to-face argument.

20. On or about October 19th, the Defendant drove up to the Plaintiff where he was living on the property, and demanded to know how many hours he had worked up to this point.

21. The Plaintiff without a word handed the Defendant a copy of a Mechanics Lien he filed on both of Defendant's lots, after the previous day's verbal confrontation, and then handed the Defendant Plaintiff's completed current weekly time card.

22. On or about October 21st, within 72 hours of Plaintiff's employment immediate termination by the Defendant, the Defendant handed the plaintiff his final payroll check, numbered 4775.

**5.**

23. It is a fact; the Defendant did not pay the Plaintiff by a T & J Wood Products company check, as he had in the past for hours worked by the Plaintiff in previous weeks or with cash up to the day of termination, but with a joint personal checking account check of Jim Asby and Teresa Posie.

### FACTS CONTINUED,

24. The Defendant listed the lot for sale, the Plaintiff lived on, a week or so prior to Plaintiff being terminated by the Defendant. The Plaintiff lived on that lot for the past three years. The Defendant had a buyer for the lot, but with Plaintiff's Mechanic Lien, the Defendant couldn't provide a clean title to the property.

25. Plaintiff's Mechanic Lien clearly gave in part, the reason for the lien, the $1,200.00 Plaintiff borrowed for the on the job-related injury.

26. On or about October 23, 2023, the Defendant presented a handwritten $1,200.00 check to the Plaintiff, without the Plaintiff noticing what was stated on the check's Memo line. The Plaintiff simply took the check and placed it inside his truck. Moments after the Defendant drove off, the Plaintiff recovered the check to examine it. It was then discovered the Defendant's notation on the Memo line "All seddments (sic) PD in full."

27. On or October 24th, the Plaintiff returned the $1,200.00 to the Defendant refusing to accept the check on Defendant's face value assumption all Plaintiff's claims were to be settled with the cashing of this check. In addition, Plaintiff attached a written statement along with the check, refusing to relinquish all claims against the Defendants Teresa Poise, and Jim Asby or with T & J Wood Products - for the reason given and stated therein, he returned the check.

28. On or about October 26, 2023, the Defendant was forced to present the Plaintiff with a second check for $1,200.00, reimbursement funds for the borrowed money Plaintiff needed for the injury. On the Memo line, the Defendant clearly wrote "for chip tooth." The Plaintiff released the Mechanic Lien for the property the Defendant had a buyer for, but refused to release the second lot's Mechanic Lien based on still outstanding claims the Plaintiff had against the Defendant. The Defendant was furious.

**6.**

## FACTS CONTINUED,

29. It had only been a week since the Defendant told the Plaintiff to immediately move from the lot he had been living on for three years, the same lot up for sale, the same lot buyers were prepared to purchase. But the buyer did not want anyone still living on the property when papers were to be signed to buy the lot.

30. On or thereabouts of October 30, 2023, Defendant Rydel Peterson (hereinafter referred to as "Peterson") contacted the Plaintiff by telephone. He identified himself as an attorney, and that he was calling on Defendant Asby's behalf. Truth be known, Peterson was working for the real estate agent, Defendant Carla Hardy, and not Defendant Asby. It was a fact, Peterson had never met Defendant Asby. He instructed the Plaintiff to immediately move off the lot he had been living on for the past three years. Defendant Peterson further stated that, he would contact the sheriff's office if Plaintiff refused to immediately move. The Plaintiff advised Peterson that he had tenant rights under the Landlord Tenant Act. Peterson clearly stated to him that, they don't apply to him (Plaintiff). Then Defendant Peterson told the Plaintiff he was at the lot now. The Plaintiff advised Peterson he, himself, was enroute there.

31. While enroute, the Plaintiff contacted the Missoula County Sheriff's department to inquire if he had rights under the Landlord Tenant Act. In short, the deputy confirmed with the Plaintiff, he had rights under the Act that would protect him. The deputy went on to explain that, he had well established residency, by living on the property over three years, and that he had been receiving mail at the property.

32. In short, when the Plaintiff arrived at the property to meet with attorney Peterson. Peterson soon thereafter admitted he was working for the real estate agent, Defendant, Carla Hardy, as agent representing Asby, as seller. Peterson told the Plaintiff he had been hired by her to get the Plaintiff off the property altogether. Peterson admitted that, they were all "Friends." Meaning, Carla Hardy and Peterson were friends, and that she called him, and was paying him to get the Plaintiff off the property by any means, so the deal could be closed on schedule with the prospective buyers. Meaning, since Peterson was an attorney, the use of his title as an attorney,

7.

scare tactics and with the threat of calling the sheriff's department on the Plaintiff, harassment or by any other means was to be used to quickly get the Plaintiff to move off the property through intimidation, harassment, scare tactics - these were used. It was a situation of "A no holds bar approach" to accomplish this.

33. It is a fact; Asby's lot was listed through MLS for $175,000.00. Defendant, Carla Hardy's commission was a flat $25,000.00. The buyers made it clear, they were prepared to sign the papers, but didn't want the Plaintiff still living on the property after the signing.

34. It is a fact; the Plaintiff was never under a 30-Day Written Notice to Vacate. He had never been served with a 30-Day Notice to Vacate at any time from the property by Defendant, Asby or by Defendant, Peterson, or anyone else. After continued harassment by both Defendant Peterson and Defendant Asby, the Plaintiff contacted the Missoula County Sheriff's Department, and deputy Sept contacted Defendant Asby, and specifically told the Defendant he needed to still go through the 30-Day Written Notice for Plaintiff to Vacate. Defendant Asby refused to believe this, explaining to the deputy that, Defendant Peterson assured him he didn't need to, that the attorney could better explain it to the deputy if he would call him. Deputy Sept made it clear he was wrong, and was not going to contact the attorney.

## FACTS CONTINUED,

35. The closing date to sign papers between buyers and seller loomed, Defendant Carla Hardy stressed and panicked over the possibility of loosing her $25.000.00 commission from the buyer, by backing away from the purchase of the lot altogether.

36. It is a fact, the Plaintiff worked nights, and when off work, during the day he moved his personal property very much every day to storage from the property. The problem in moving the two horse trailers and a flatbed trailer, they weren't registered, and could not be moved to a storage lot due to a Montana law, that prohibited the storing of unregistered vehicles/trailers at storage facility. Defendant Peterson unaware of this law, as he, too, checked with trailer storage facilities and learned of this fact for a first time. To register the trailers required bonding. Since the Plaintiff was sold these trailers without a title, he only received Bill of Sales from the sellers.

8.

In short, the Plaintiff didn't have the immediate funds to pay for the bonds on all three trailers all at once, and therefore, could not move these trailers immediately from the lot.

## FACTS CONTINUED,

37. On or about November 1, 2023, Defendant Peterson sent the Plaintiff a text:

**"Mr. Asby will give you until Monday, November 6th, at 5:00 pm to remove the rest of your personal property from his lot at 13495 Lacasse Lane. If your property is not removed by that time, Mr. Asby will trespass you from the property and will make the necessary arrangements to remove whatever is left of your property."**

38. The Plaintiff again contacted the Missoula County Sheriff's Department, and it had been reiterated by deputy Shermer, that the Plaintiff was already an established resident of the property, receiving mail through the United States Postal Service there. Therefore, Defendant, Asby would still need to go through the 30-Day Written Notice Eviction process.

39. It is a fact; the November 6th, 5;00 pm deadline came and went without the Plaintiff being issued a trespass, and nothing of Plaintiff's property was removed by anyone other than the Plaintiff himself.

40. It is a fact, on or about November 1st, that day of Defendant Peterson's text threat to the Plaintiff to remove himself from the property, the listing of the lot at 13495 Lacasse Lane had been removed from MRMLS (source #30014579 report) (it had been taken off the market).

## FACTS CONTINUED,

41. On or about November 14th, Defendant Asby confronted the Plaintiff and demanded to know if he had a plan (to move). The Plaintiff did have a plan, but it required waiting until two days later, with his nighttime job paycheck, he could pay the bonds for the three trailers to be inspected, and receive plates/registration to move them to trailer storage facilities. It was at that time, Defendant Asby threatened the Plaintiff he would have somebody move his things off the

9.

property if he didn't. The Plaintiff asked the Defendant who he was going to have it done by?" The Defendant replied, "Somebody!" the Plaintiff told the Defendant, "It had better be legal."

42. On or about the evening/night of November 15th, while the Plaintiff at work, working nights, Defendant, Asby, without ever having issued a 30-Day Notice to the Plaintiff to Vacate or a Court Order to remove Plaintiff's property from the lot 13495 Lacasse, then Defendant, Asby paid an individual to remove ALL Plaintiffs vehicles; two 4-horse stall hauling trailers, a flatbed trailer, a Ford Explorer, and a 27-foot Jayco R.V. trailer, the Plaintiff had been living in on the property for three years, and unlawfully removed them to another property approximately 2 miles away onto someone's land the Plaintiff did not know. It wouldn't be until November 16th after getting off work, the Plaintiff driving to 13495 Lacasse Lane, as he normally did, would he learn of what Defendant, Asby had done with Plaintiff's property – removed all trailers and R.V.

43. How the Defendant wouldn't understand, that the Plaintiff would simply accept what was done to him, and his property without being angry, would be a huge underestimation, but a planned move to get the Plaintiff off the land from the concerted efforts of all the Defendant's, so Defendant Hardy could collect her $25,000.00 commission, and Defendant, Asby could collect his asking sale price of $150,000.00. Furthermore, Defendant, Asby would seal the deal to rid himself of the Plaintiff by filing a false police report. The Plaintiff was arrested a short time thereafter and taken to the Missoula County Jail. With the Plaintiff in custody and in jail, none of the Defendants expected what would happen next - three days later.

44. It is a fact; the Plaintiff would make bail within two days, and was released from the county jail the following day (total of three days) later. Upon his release, the Plaintiff would go to inspect the horse trailers, flatbed trailer, the Ford Explorer towed, and the R.V. Upon inspecting the R.V. trailer, he found that two of its windows had been pried out, latches broken but no entry inside through them. However, the R.V. trailer passage door lock had been pried and broken, and access was gained inside. The Plaintiff immediately reported the breaking in of

**10.**

the R.V., and an investigation was begun by the Missoula County Sheriff's Department. The Plaintiff later, the next day, was shocked to learn who it was that broke into his trailer. The individual who broke into Plaintiff's trailer was the very individual Defendant, Asby had hired to unlawfully remove all of Plaintiff's trailers and vehicles from the property lot 13495 Lacasse. What was more shocking, was the stolen property belonging to the Plaintiff's -- taken by the individual who broke into Plaintiff's R.V., that property was then taken and given and received by Defendant, Peterson. Defendant, Peterson admitted to the investigating deputy, he knew the property belonged to the Plaintiff, and that he knew who broke into the Plaintiff's R.V.

45. On or about November 22, 2023, the Plaintiff was contacted by a federal employee and conveyed she witnessed the burning of Plaintiff's personal property, at 13495 Lacasse Lane, Missoula, Montana 59808, by Defendant, Asby. The Plaintiff was horrified over the news.

## COUNT ONE

### (Retaliation)

46. Plaintiff incorporates each and every paragraph of the Complaint herein by reference.

**Protected Activity – Whistleblower Protection**

47. No employer may discharge or in any other manner retaliate against an employee for engaging in activity protected under TFA – Tax First Act

48. The Plaintiff provided information regarding what he believed violated internal revenue laws or any provision of Federal law relating to tax fraud regarding Defendant, Asby and Defendant, Teresa.

49. On or about October 18th. 2023, the Plaintiff told Defendant, Asby, he reported and provided information to the Internal Revenue Service, and the Montana Tax Revenue Department about his tax fraud activities. Defendant, Asby was furious.

50. The retaliation by Defendant, Asby was immediate, an adverse action against the Plaintiff because of activity protected by TFA.

11.

51. The retaliation by Defendant Asby was then immediate, it was severe, re: the firing of Plaintiff from T & J Wood Products, intimidation, making threats, and ousting of the Plaintiff from his residence of three years at 13495 Lacasse Lane, Missoula, Montana. These acts were in violation of **TFA 26 U.S.C. § 7623(d), and Mont.Admin.R. 24.9.603(a)(b)(c)(2)(a)the burning and/or destruction of Plaintiff's property (b)(c)(d) eviction/housing.**

52. As a result of the actions of Defendants, more particularly Defendant Jim Asby, each of them, Plaintiff is entitled to actual, compensatory, consequential and punitive damages.

## COUNT TWO

### (Defamation)

53. Plaintiff incorporates each and every paragraph of the Complaint herein by reference. On November 16, 2023, the Defendants, and each of them, particularly Defendant Jim Asby, repeatedly made false statements, and again thereafter, in a TOP – Temp. Order of Protection filing, made false statements about the Plaintiff or statements that placed the Plaintiff in a false light and/or conspired to do so.

54. Defendants, each of them either knew the statements were false, acted in a reckless disregard of these matters, or acted negligently in failing to ascertain the truth or falsity of the statements.

55. Defendants, and each of them, made statements that impeached the honesty, integrity, virtue or reputation of Plaintiff, or brought Plaintiff into disrepute, contempt. or ridicule.

56. Defendants, and each of them published the statements with the intention of damaging Plaintiff's reputation and business opportunities.

57. As a result, the false statements, Plaintiff suffered harm to his reputation, economic condition.

58. As a result of the actions of Defendants, each of them, Plaintiff is entitled to compensatory, consequential and punitive damages.

12.

## COUNT THREE

### (Harassment)

59. Plaintiff incorporates each and every paragraph of the Complaint herein by reference.

60. Defendants, and each of them, particularly, Defendants Jim Asby, Defendant Carla Hardy, and Defendant Rydel Peterson, committed a series of acts over a period of time, individually and in concert, with the intention of causing Plaintiff to become seriously alarmed, annoyed or harassed.

61. As a result of the actions of Defendants, each of them, Plaintiff is entitled to compensatory, consequential and punitive damages.

## COUNT FOUR

### (First and Fourteenth Amendment – Due Process

### And Equal Protection)

62. All prior allegations are repeated and realleged by the Plaintiff and incorporated herein by reference with the same force and effect as if herein set forth.

63. At all relevant times herein, Plaintiff had a right under due process and equal protection clause of the state and federal constitutions not to be deprived of his constitutionally protected interest in his property.

64. The Fourteenth Amendment of the United States Constitution, Section 1, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, and the unlawful act of the taking of property.

65. At all times relevant herein, the Defendants were state actors and their conduct was subject to **42 U.S.C. §§§ 1983, 1985, and 1988**.

66. A property interest, exist when a person has a "legitimate claim of entitlement" to a benefit.

67. Acting aside or under the color of law, Defendants worked a denial of Plaintiff's right to his property, and due course of justice was impeded, in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.S. § 1983.

68. Defendants acting in unison denied the rights, privileges and protections to exercise his Constitutional rights, and to be heard in a Court of Law

69. The conduct of Defendants', each of them, deprived Plaintiff of the following rights, privileges and immunities secured by him by the Constitution of the United States:

(a) The right of Plaintiff not to be deprived of life, liberty, or property without due process of law, including the right to not have defamatory statements made about him, and the right to the equal protections of the laws, secured by the Fourteenth Amendment to the Constitution of the United States.
(b) The right of Plaintiff to be free from conspiracy, malicious prosecution and abuse of process secured by the Fourteenth Amendment to the Constitution of the United State.

70. The acts of Defendants were performed knowingly, intentionally, and maliciously and were abusive and irrational.

**WHEREFORE**, Plaintiff demands judgement for the violation of his civil rights against all of the Defendants jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000.00 and further demands against all Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus pre and post-judgment interest, the cost of this action, including attorney's fees, as provided by **42 U.S.C. §1988**, and such other relief deemed to be just, fair, and appropriate.

## COUNT FIVE

### (Violation of 42 U.S.C. 1985(5) (Conspiracy)

71. All prior allegations are repeated and realleged by Plaintiff and incorporated herein by reference with the same force and effect as if herein set forth.

72. The Defendants conspiratorial purpose was for their personal financial gain, in addition to deprivation of Plaintiff's property.

73. Defendants' conspiracy began from October 18, 2023, and the perceived need to oust the Plaintiff's from 13495 Lacasse Lane, and continues through the present (11/23/2023).

74. Defendants, each of them, conspired to inflict an injury upon the Plaintiff by committing an unlawful act or acts by unlawful means to include filing criminal complaint/s against Plaintiff when they knew such charges were not supported by probable cause by every means possible to oust the Plaintiff from 13495 Lacasse Lane, to secure their own gains in financial advantages

14.

whereby, all Defendants saw the Plaintiff as impeding their efforts to that end.

75. In furtherance of their objective, Defendants did two or more overt acts against the Plaintiff. Those unlawful overt acts include, but are not limited to, the facts outlined in Count Five, supra, conspiracy under section **1985(5).**

76. All Defendants are liable for their acts.

77. The Defendants intentionally interfered with Plaintiff's exercise and enjoyment of his clear and established rights secured by the state and federal constitutions or laws of the United States and/or the State of Montana, and thereby deprived him of those rights and caused him injuries.

78. Defendants, each of them, conspired to inflict an injury upon Plaintiff by retaliating against Plaintiff and depriving Plaintiff of his constitutional rights under the 1st and 14th Amendments to the U. S. Constitution.

79. As a result of the concerted unlawful and malicious conspiracy of all the Defendants, the Plaintiff was deprived of his rights to due process and the equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and **42 U.S.C. §§ 1983 and 1985.**

80. As a result of Defendants' actions, Plaintiff suffered injuries and loss of his constitutional rights and he is intitled to compensatory, consequential and punitive damages.

**WHEREFORE**, Plaintiff ask judgment against Defendants for actual damages, punitive damages, pre and post-judgment interest, the cost of suit, reasonable attorney's fees, as provided by **42 U.S.C. §§ 1983** and **1988**, and all other relief the Court deems appropriate.

## COUNT SIX

### Damages Arising Under 42 § 1988 Against Defendants

81. All prior allegations are repeated and realleged by Plaintiff and incorporated herein by reference with the same force and effect as if herein set forth.

82. Plaintiff's injuries and constitutional violations were directly and proximately caused by

15.

the omissions and commissions of the named Defendants herein.

83. As a direct and proximate result of Defendant T & J Wood Products, unreasonable, and unconstitutional customs, policies, practices, and actions, and due to its complete and deliberate indifferences, Plaintiff suffered injuries and damage, endured and will endure extreme pain and suffering, suffered and will suffer emotional harm and mental anguish, incurred expenses. Defendants' misconduct was deliberate, willful, wanton, and malicious. Defendants reckless disregarded the rights of the Plaintiff.

84. This claim for recovery invoking the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and **42 U.S.C. § 1985** against Defendant T & J Wood Products, and Defendants,

**WHEREFORE**, Plaintiff ask for judgment against Defendants for actual damages, punitive damages, pre and post-judgment interest, the cost of suit, reasonable attorney's fees, as provided by **42 U.S.C. §§ 1985** and **1988**, and all other relief the Court Deems appropriate.

## COUNT SEVEN

### Negligent Infliction of Emotional Distress

85. All prior allegations are repeated ad realleged by Plaintiff and incorporated by reference with the same force and effect as if herein set forth.

86. The Defendants acted intentionally or recklessly when they violated Plaintiff's Constitutional rights. The Defendants' conduct was extreme and outrageous. The Defendants' conduct was directed at the Plaintiff or at third person. The Defendants' conduct proximately caused the Plaintiff emotional distress, and the emotion suffered by the Plaintiff was severe. Furthermore, the Defendants must have contemplated the harm that the Plaintiff would endure from the reality of incarceration and possibility of being incarcerated in the future for false criminal charges. The Defendants' knew that the Plaintiff was peculiarly susceptible to emotional distress by the thought of being incarcerated/future incarceration for an unknown amount of time on false charges. The Plaintiff has suffered mental anguish by Defendant Jim Asby's burning of Plaintiff's personal property. The Plaintiff has been harmed by intentional

**16.**

infliction of emotional distress by the Defendants, and hereby sues for recovery of his damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays the Court grant him the following relief as against the Defendants Jim Asby, Teresa Posie, T & J Wood Products, Carla Hardy, and Rydel Peterson, to-wit:

A. General damages in the amount to be found by the trier of fact, but in an amount not less than $5,000.000.00;

B. Special damages in the amount to be found by te trier of fact, but in an amount not less than $5,000.000.00;

C. Exemplary damages in an amount not less than twice the amount, of actual damages, both in general and special, for the sum not less than $10,000,000.00;

D. Prejudgment interest at the maximum rate permitted by law;

E. Post Judgment interest at the maximum rate permitted by law;

F. Attorney's fees as and if permitted by law;

G. Cost of Court;

H. And such further relief, at law and in equity, to which the Plaintiff may be justly entitled.

Respectfully Submitted:

Date: 11/24/2023

By: _____
David L. Weik – Pro Se

17.